WALTER R. MULLIKIN, AS TRUSTEE IN BANKRUPTCY OF PEDERSEN-AYARS FURNITURE COMPANY, A CO-PARTNERSHIP, APPELLANT, v. MAYSEL I. PEDERSEN ET AL., APPELLEES.
71 N. W. 2d 485

Filed July 15, 1955. No. 33758.

Donald V. Lowe, for appellant.

Maupin & Dent, Richard W. Satterfield, and James N. Ackerman, for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and FLORY, District Judge.

BOSLAUGH, J.

This is an action in equity to have a trust declared and impressed upon the proceeds of a life insurance policy on the life of Hilbert F. Pedersen, payable to his wife, because as it is claimed the funds used by the insured to satisfy the cost of the insurance were wrongfully obtained by him from the partnership of which he was a member.

Pedersen-Ayars Furniture was organized March 5, 1947, by Hilbert F. Pedersen and Homer R. Ayars of North Platte as a partnership in accordance with the Uniform Partnership Act of Nebraska to engage in and conduct a retail furniture, floor coverings, and appliance business in that city. Its capital structure was $34,000 apportioned to the organizers as the only members thereof on the basis of $20,000 to Hilbert F. Pedersen and $14,000 to Homer R. Ayars. It was agreed that the partners should own the business and assets of the partnership 20/34ths by the former and 14/34ths by the latter; that the partners should each devote his entire time and efforts to the business and affairs of the firm; that each should until it was otherwise agreed receive monthly $250 as compensation; and that the compensation of each should always be an equal amount. Hilbert F. Pedersen was constituted general manager and was empowered to determine the policies of the organization.

Hilbert F. Pedersen, spoken of hereafter as deceased, died June 1, 1954. The partnership June 23, 1954, was on the petition of Homer R. Ayars, the surviving partner, adjudged a bankrupt by the United States District

Court for the District of Nebraska, and July 9, 1954, appellant was appointed and qualified as trustee of the estate of the bankrupt.

Deceased made application to Bankers Life Insurance Company of Nebraska July 24, 1952, for a policy of insurance on his life and it issued to him the next day a policy of insurance in the maximum amount of $10,000 in which Maysel I. Pedersen, his wife, was designated beneficiary. She survived him. The premiums on the policy were payable monthly. They were paid except the last which was due but not delinquent at the time of the death of the deceased and it was deducted from the proceeds of the policy as authorized by its terms.

The claim of appellant in this litigation is that all the premiums except the final one were paid by the deceased with funds of the partnership misappropriated to that use by him secretly without notice to, knowledge, or consent of his partner Homer R. Ayars and contrary to the terms of the articles of partnership; that during the time of the illegal abstraction and wrongful appropriation of the funds of the firm to the payment of the insurance premiums the deceased was acting in a fiduciary capacity for the firm and by virtue thereof he became and was a trustee of the policy for the partnership; that he held only the legal title thereof for the exclusive benefit of the partnership as the cestui que trust; that Maysel I. Pedersen claimed to be the only beneficiary of the policy of insurance, was attempting to appropriate to her use the proceeds thereof, and would do so unless prevented by the judgment of the court; and that the insurer unless prevented by the court would pay to the named beneficiary the proceeds of the policy. The relief asked was that the insurer be restrained from paying and the beneficiary be enjoined from receiving the proceeds of the insurance; that a trust be imposed upon the proceeds of the policy in favor of appellant; and that he have and receive the proceeds of the policy of insurance.

The Bankers Life Insurance Company of Nebraska

conceded the existence and validity of the policy of insurance on the life of deceased; the receipt of all premiums on its account except the last one due at the time of the death of the deceased; the deduction of it from the amount of the policy; the fact that Maysel I. Pedersen was the named beneficiary therein; and that the net amount of the insurance was held by the insurer subject to the rights of the beneficiary. The insurer offered to pay the amount due on the policy with interest as the court adjudged.

The substance of the answer of Maysel I. Pedersen was a denial of the allegations of appellant except she admitted the existence of the partnership and the adjudication of bankruptcy against it; that appellant was the trustee in bankruptcy; and that the policy of insurance on the life of the deceased duly issued by the insurer was in force at the time of the death of the deceased and Maysel I. Pedersen was beneficiary of the insurance. She asserted that the premiums on the policy were required to be paid monthly; that it granted a grace period of 31 days for the payment of any premium from the due date thereof; that the policy had no provisions for paid-up or extended insurance and it wholly terminated on the 31st day after any monthly premium thereon became due; and that the beneficiary to keep the policy in force for her benefit paid with her individual funds to the insurer premiums on the policy including those for the months of March and April 1954. If she had not done so the policy would have terminated before the death of the deceased and that no amount would have been realized from it.

The district court found that the motion of appellees for a dismissal of the petition of appellant made at the close of his evidence should be sustained; that the Bankers Life Insurance Company of Nebraska should pay the proceeds of the policy of insurance issued by it on the life of the deceased including any accruals thereon to the clerk of the district court; that when payment had

been made by the insurer it should be discharged from liability upon the contract of insurance and the temporary injunction issued herein should be dissolved; that the proceeds of the insurance policy were the property of appellee Maysel I. Pedersen; that the clerk of the court upon receipt of the amount thereof from the insurer should pay to appellee $9,158.20 and any accruals on the policy, and the clerk should retain $785.50, the amount of the funds of the partnership devoted to payment of premiums on the insurance contract, until the further order of the court; and that it was not possible for the court to determine from the proof produced whether the partnership funds used by deceased to pay insurance premiums on the policy were the distribution of firm assets to him or whether they were wrongfully received and appropriated by him and are recoverable as partnership property. A judgment was rendered in harmony with the findings made. A determination of the correctness thereof is the purpose of this appeal.

The ground of the claim of appellant that he is entitled to the insurance fund, the subject of this controversy, is that the premiums upon the policy were paid by money wrongfully taken by the insured from the partnership and that this affords a basis for equity to impress a trust upon the fund in favor of appellant to remedy a wrong done by the insured and to prevent the beneficiary profiting from the misappropriation and wrongful acts of the deceased. The claim of appellant that he should recover the entire fund realized from the insurance contract cannot prevail in any event because of a failure of proof that all of the cost of the insurance was satisfied with partnership funds. There is no authority which supports this claim. There are decisions that if a person wrongfully obtains money of another and uses it in the payment of premiums for insurance on his life a trust is created in favor of the person from whom the money was wrongfully, illegally, or fraudulently appropriated, and that the latter is entitled to such

portion of the total insurance as the amount of the premiums which have been paid from the money bears to the total premiums paid. Truelsch v. Miller, 186 Wis. 239, 202 N. W. 352, 38 A. L. R. 914; Vorlander v. Keyes, 1 F. 2d 67; Massachusetts Bonding & Ins. Co. v. Josselyn, 224 Mich. 159, 194 N. W. 548; Shaler v. Trowbridge, 28 N. J. Eq. 595; Brodie v. Barnes, 56 Cal. App. 2d 315, 132 P. 2d 595; Jansen v. Tyler, 151 Or. 268, 47 P. 2d 969, on rehearing, 151 Or. 288, 49 P. 2d 372; Proctor v. MacClaskey, 278 Mass. 238, 179 N. E. 600; Annotation, 38 A. L. R. 930; 29 Am. Jur., Insurance, § 1299, p. 969. In other jurisdictions the doctrine is that recovery in such a situation is limited to the amount of the premiums paid by the insured with wrongfully acquired money of another. Board of Public Instruction v. Mathis, 132 Fla. 289, 181 So. 147; Thum v. Wolstenholme, 21 Utah 446, 61 P. 537; Succession of Onorato, 219 La. 1, 51 So. 2d 804, 24 A. L. R. 2d 656; American Nat. Bank v. King, 158 Okl. 278, 13 P. 2d 164; Hubbard v. Stapp, 32 Ill. App. 541. This court has not considered or determined the rule which should govern in such a situation and it is not necessary to decide it in this case.

Maysel I. Pedersen, identified herein as appellee, argues that provisions of the insurance law of the state bar recovery by appellant. These are contained in section 44-371, R. R. S. 1943: "All money * * * and every benefit accruing under * * * any policy or certificate of life insurance payable to a beneficiary other than the estate of the insured * * * heretofore or hereafter issued, shall be exempt from * * * all claims of creditors of the insured, and of the beneficiary if related to the insured by blood or marriage, in the absence of a written agreement or assignment to the contrary." The right to the relief demanded by the appellant does not depend upon a written agreement concerning or an assignment of the insurance involved in this case. It is not controverted that the appellee was the named beneficiary and the wife of the insured. The inappli-

cability of the statute is asserted by the appellant because of his claim that the cost of the insurance was paid with funds of the partnership wrongfully misappropriated and used by the deceased.

The statute does not operate to protect from the claim of a creditor the proceeds of an insurance policy on the life of the insured purchased with funds wrongfully, illegally, or fraudulently obtained by him from the creditor. Succession of Onorato, *supra,* considered a statutory provision that the proceeds of life insurance should be exempt from all liability from any debt not secured by a pledge or assignment of the policy or incurred by advance payments made on or against the policy. The insurance fund involved therein was the proceeds of insurance policies on the life of the insured, cost of which had been wrongfully paid with money in his hands as agent of named persons. It was argued that the statute protected the fund from the claim of the principals of the insured whose money without their knowledge was appropriated to the payment of the cost of the insurance. The court said: "The first question, then, is whether the exemption provided in the statute can be successfully used as a shield to protect the fruits of a fraudulent act. In other words, can such statute operate to validate a fraudulent act, and offer to one who practices such reprobated fraud a refuge or sanctuary for the property so taken, so that it can be placed beyond the reach of those defrauded? The answer must be in the negative, for it was never the intention of the Legislature by this exemption to encourage fraud and to provide a safe depository for stolen funds." In Truelsch v. Miller, *supra,* the court remarked: "The statutes guarding the rights of married women in insurance policies and homesteads are beneficent statutes, which are liberally construed in their behalf. But they are not designed to encourage fraud or to make such property a safe depository for stolen funds." It is said in Massachusetts Bonding &

Ins. Co. v. Josselyn, *supra:* "The fact that the wife of Reeber, instead of his estate, was named as beneficiary cannot affect plaintiff's rights. * * * While the statute (2 Comp. Laws 1915, § 9345) provides that moneys payable under policies in which the wife is named as beneficiary are not subject to the claims of creditors, the question here presented is not one of preference. Her right under the statute must yield to the paramount right of the estates, the moneys of which furnished the consideration for the investment." See, also, McConnell v. Henochsberg, 11 Tenn. App. 176; Jansen v. Tyler, *supra;* Shaler v. Trowbridge, *supra;* Exchange State Bank v. Poindexter, 137 Kans. 101, 19 P. 2d 705; 22 Appleman, Insurance Law and Practice, § 14585, p. 622. A much discussed and severely criticised decision to the contrary is Bennett v. Rosborough, 155 Ga. 265, 116 S. E. 788, 26 A. L. R. 1397, in which it is said: "Where the husband takes out a policy payable to his wife and does not change the beneficiary, creditors of the husband can not in this State, in a contest with the wife, take the money, even though premiums might have been paid at a time when the husband was insolvent or with money which had been stolen from the creditors." That case is definitely in the minority and is thought to be unsound. If it is proven that an insured used money wrongfully received by him to defray the cost of the insurance a denial of the exemption of the statute does not involve the taking away of the insurance money, as such, from the wife contrary to her designation as beneficiary by the insured, but merely the restoration to the creditor of the money to which he was equitably entitled which had been diverted to the payment of premiums which produced the insurance. The defrauded creditor in such a situation claims no positive benefit from the insurance but denies the power of the insured to put the money to which the former was equitably entitled beyond his reach by investing it in insurance for the benefit of the wife of the insured.

It is difficult to deny the justice of this. The statute of this state above quoted is not applicable and does not constitute a defense to the claim of appellant.

It is insisted by appellee that the proof is inadequate to justify any recovery by appellant. The deceased and Homer R. Ayars, hereafter spoken of as Ayars, the members of Pedersen & Ayars Furniture, operated it in a retail business for the sale of furniture, floor coverings, and household appliances from the time the firm was organized in March 1947, until the death of the deceased June 1, 1954. There is no showing of what was done with the partnership, its business, and assets from then until the adjudication of bankruptcy against the partnership.

The partners were each active in the conduct of the business and affairs of the firm. The deceased was designated manager thereof and dictated its policies. He had charge of the office and the routine matters in the conduct of the business. Ayars conducted sales, did part of the buying, looked after the inventory, and on occasions attended to payments of items of indebtedness of the firm. He would direct the bookkeeper to write any check necessary to be used in paying such items and he and the bookkeeper would sign it. The articles of partnership required all its funds to be deposited in a store account and to be withdrawn only by checks on the account signed by both partners but the practice was for both partners or one of them and the bookkeeper to sign its checks. The bookkeeper was employed in May 1951 and she continued until the business closed. Her hours were from 1 to 5:30 p. m. on each business day. It was probably because of this that she signed few checks with one of the partners as compared with the total number of checks made. The partners each signed incompleted blank checks and left them at the store where they could be used. Ayars did this oftener than the deceased. They also each signed checks after they had been completed except as

to signatures. Ayars testified that he could not identify any particular check as to whether it had been signed before or after it was completed by having the blank spaces on it properly filled. It is a fair inference that Ayars had access to the papers, books, and records of the firm. In any event he did not say when he was a witness that he did not have. It was a practice of each partner to pay individual items of indebtedness with partnership checks drawn on the partnership account. The books and records of the firm were submitted each month to Hansen & Fuenning, auditors and accountants of North Platte, and they made a report to it of their examination and the result thereof each year, and there is some indication a report was made by the accountants each month. None of these were produced or accounted for and no member of the firm of the accountants was called as a witness. An embezzler does not generally submit the records of his defalcation to auditors and accountants for an examination and report.

There is no direct evidence that deceased paid any cost of the insurance with funds wrongfully secured by him. No witness testified that deceased improperly appropriated any money or thing of value from the partnership or that premiums upon the policy on his life were satisfied with any funds or property of the partnership. The proof of appellant in this regard is entirely circumstantial. The proof in this respect is that deceased used checks drawn on the partnership account to the order of his landlord in payment of rental of the residence property where deceased lived; that there were checks drawn on the firm account payable to the order of the insurance company used by deceased to pay premiums on the policy on his life; and that there were checks payable to deceased drawn on the firm account but the purpose for which they were drawn or used is not indicated by any evidence. All of these checks except three were signed by both partners.

It is not asserted or attempted to be established that

the deceased was insolvent, what his assets or income other than from the firm were, or how his salary was disposed of. There is an entire absence of proof when, before the partnership was adjudged bankrupt, it became insolvent and the value of its' assets or the amount of its obligations. The unsupported statement of Ayars that he and the deceased each drew a regular salary of $250 a month, $125 every 2 weeks "most of the time" is contrary to the record evidence and cannot be accepted as the fact. There were eight checks of the firm payable to the deceased and endorsed by him that were identified by Ayars as salary checks given to deceased. The date and the amount of these follow: 7-22-1952, $125; 11-7-1952, $54.38; 11-25-1952, $55.16; 11-26-1952, $25.60; 12-6-1952, $74.95; 2-6-1953, $100; 7-21-1953, $75; 7-22-1953, $125. This is convincing proof that deceased did not draw a regular salary or a definite amount, one-half thereof every 2 weeks.

The records of the partnership introduced show that at irregular times in varying amounts between October 3, 1952, and June 12, 1954, Ayars received from the partnership about $1,200 in excess of the amount paid by it to deceased. The refutation of the claim of Ayars concerning regularity of the monthly amount of salary to each partner and the payment thereof in equal amounts each 2 weeks is complete by such items as $418.90 received by Ayars in January 1953, consisting of $300 January 20 and $118.90 January 22, and $325 in February 1954.

The partner of the deceased testified for appellant but he did not say that the deceased wrongfully took or that he improperly used any of the property or assets of the partnership. The burden was on appellant to establish that deceased improperly appropriated assets of the partnership to the payment of the cost of the insurance or of a part of it. The nature of the trust appellant seeks to have impressed on the insurance policy is characterized by his allegation that the deceased was

a trustee ex maleficio of the insurance contract for the partnership. In Peterson v. Massey, 155 Neb. 829, 53 N. W. 2d 912, it is said: "The burden of establishing a constructive trust is always upon the person who bases his rights thereon and he must do so by evidence that is clear, satisfactory, and convincing." The circumstantial evidence relied upon by appellant is not sufficient to establish the indispensable elements of his case. In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523, states the manner of considering this class of evidence: "Circumstantial evidence is insufficient to sustain a verdict or to require submission of a case to a jury unless the circumstances proved by the evidence are of such a nature and so related to each other that only one conclusion can be reasonably drawn therefrom." Appellant has not met the requirements of the law in these respects.

The proof in the case is limited to evidence offered by appellant. There is no irreconcilable conflict to resolve. This is an equity case and the court is obligated to consider and determine it de novo without regard to what was done in the trial court. Appellee is entitled to recover all of the proceeds of the insurance policy including interest thereon and any accruals to the policy, and to have the temporary injunction granted therein vacated and dissolved.

The cross-appeal of appellee cannot be sustained. The rule relied upon therein is to the effect that one partner may not maintain an action against his copartner for an amount alleged to be due him on account of partnership transactions where no settlement of the partnership accounts and business has been had. Lord v. Peaks, 41 Neb. 891, 60 N. W. 353; Sanley v. Davies, 113 Neb. 614, 204 N. W. 385. The present case is not a suit by one partner against his copartner. It is an action by the trustee in bankruptcy of the estate of the bankrupt. The bankrupt is the partnership, a legal entity. The trustee represents the bankrupt. He ap-

pears as a party to this litigation in that capacity. 6 Am. Jur. (Rev. Ed.), Bankruptcy, § 637, p. 915. The cross-appeal should be and it is dismissed.

The judgment should be and it is reversed and the cause is remanded to the district court for Lincoln County with directions to render and enter a judgment in the cause in favor of Maysel I. Pedersen, and against the Bankers Life Insurance Company of Nebraska, for the full amount of the proceeds of the policy No. 330765 issued on the life of Hilbert F. Pedersen July 25, 1952, in the sum of $9,943.70, plus any interest thereon or other accruals to the policy and with interest on the total amount of the judgment as provided by law, and vacating and dissolving the temporary injunction granted and allowed in this case August 5, 1954. The costs of the action should be and they are taxed to appellant.

REVERSED AND REMANDED WITH DIRECTIONS.