IN RE ESTATE OF JAMES M. REDPATH, DECEASED.
MARY ALICE PETERSON, PERSONAL REPRESENTATIVE OF THE
ESTATE OF ALICE REDPATH, DECEASED, APPELLANT AND
CROSS-APPELLEE, V. BESSIE ANN REDPATH, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES M.
REDPATH, DECEASED, APPELLEE AND CROSS-APPELLANT.

402 N.W.2d 648

Filed March 13, 1987.    No. 85-321.

Brad Roth of Black, Sennett & Roth, for appellant.

Steven O. Stumpff, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

In January of 1982 Alice Redpath, by and through her guardian, her daughter, Mary Alice Peterson, filed a claim against the estate of her son, James M. Redpath, seeking to recover the sum of $54,581.77, which Alice Redpath maintained her son had unlawfully converted while handling moneys belonging to her. After the action was commenced, Alice Redpath died and the cause of action was revived in the name of Mary Alice Peterson, as the personal representative of the estate of Alice Redpath. Following a trial, the district court for Custer County, Nebraska, entered a decree finding in part for the estate of Alice Redpath and in part for the estate of James M. Redpath and his widow, Bessie Ann Redpath. The district court determined that the estate of James M. Redpath had confessed judgment in open court at the beginning of the trial for $348, that apparently being the amount of the premiums paid on a life insurance policy issued on the life of James M. Redpath. The court further determined that the evidence presented was sufficient to establish that James M. Redpath had in fact converted $45,119.15 from his mother and that a claim against his estate for that amount should be allowed. And, although the district court found that the estate of James M. Redpath had confessed judgment in the amount of $348, the district court further found that the appellant had failed to produce sufficient evidence to establish that the proceeds converted from Alice Redpath were used for the payment of any insurance premiums and that, therefore, the appellant had failed to establish that the insurance proceeds constituted a res upon which a constructive trust could be imposed.

It is this judgment and decree from which the personal representative of the estate of Alice Redpath has now appealed to this court. The appellee, Bessie Ann Redpath, both individually and as personal representative of the estate of James M. Redpath, has cross-appealed. We believe that the trial court was generally correct except with regard to its findings concerning the confession of judgment, and for that reason we affirm as modified.

A number of questions are presented to the court by both the

appeal and the cross-appeal. Included is the question as to whether, if a person wrongfully obtains money of another and uses it in the payment of premiums for insurance on his life, a trust may be created in favor of the person from whom the property was wrongfully, illegally, or fraudulently appropriated, over such portion of the total insurance proceeds payable as the amount of the premiums which have been paid from the money wrongfully, illegally, or fraudulently appropriated bears to the total premium paid. While that question was earlier raised in *Mullikin v. Pedersen*, 161 Neb. 22, 71 N.W.2d 485 (1955), like our decision in *Mullikin v. Pedersen*, it is not necessary for us to decide the issue in the instant case. We do not reach that question because the facts in this case fail to disclose that James M. Redpath, during his lifetime, used any of the converted funds for the payment of the premiums on the insurance policy in question.

In beginning our analysis of this matter, we note that one who claims the existence of a constructive trust has the burden of proof to establish the existence of a constructive trust by evidence which is clear, satisfactory, and convincing in character. See, *Ford v. Jordan*, 220 Neb. 492, 370 N.W.2d 714 (1985); *Fleury v. Chrisman*, 200 Neb. 584, 264 N.W.2d 839 (1978); *Marco v. Marco*, 196 Neb. 313, 242 N.W.2d 867 (1976). Furthermore, as observed by the appellant, "As a general rule, provided the property *can be traced or identified*, any third person who has obtained trust property or its product, by a transfer made in violation of the trust" may be subject to a constructive trust. (Emphasis supplied.) 90 C.J.S. *Trusts* § 441 at 850 (1955). It is necessary, however, that the property can be traced or identified.

The record in this case discloses that six premiums were paid on a Bankers Life insurance policy issued on the life of James M. Redpath and payable to his widow, Bessie Ann Redpath. The first of these premiums was paid in December of 1980, and the five remaining premiums were paid at some date thereafter. The record discloses that the premiums were paid out of a First National Bank of O'Neill, Nebraska, account or a Nebraska State Bank & Trust Co. of Broken Bow, Nebraska, account. Both accounts were jointly owned by James M. and Bessie Ann

Redpath. While the record, at best, is confusing, it would appear that the amount of the premiums paid was $348 and that during all of this time there were proceeds clearly belonging to either James M. Redpath or Bessie Ann Redpath in an amount substantially in excess of $348 in either or both of those accounts. Furthermore, the evidence would seem to disclose that, although prior to December of 1980, when the first premium was paid out of the O'Neill account, funds belonging to Alice Redpath were deposited in one or both of the Nebraska accounts, more than $15,000 was transferred from the account in O'Neill, Nebraska, to an account in Tennessee in the joint names of James M. Redpath, Alice Redpath, and Bessie Ann Redpath. Based on the evidence before us, it would appear that by the time that the first premium was paid in Nebraska, most of the moneys belonging to Alice Redpath which had been deposited in either of these Nebraska accounts had been transferred back to an account in Tennessee and that no part of the funds converted from the Tennessee account was ever used to pay the premiums on the policy of insurance issued by Bankers Life on James M. Redpath's life.

In G. Bogert & G. Bogert, The Law of Trusts and Trustees § 926 at 407-08 (2d ed. 1982), the noted authors observe:

> If [the trustee] makes a withdrawal from the mixed account for an admittedly personal purpose, for example, to pay his living expenses or his individual debts, or for an unknown purpose, such withdrawal will be charged to the personal part of the account as long as there remains any cash or credit in such personal portion of the account. It will be only after the personal credit or cash is exhausted that withdrawals for personal or unknown purposes will be charged to the trust side of the account.

And, in *State v. Bank of Commerce*, 54 Neb. 725, 728, 75 N.W. 28, 29 (1898), we said: "[W]hen a trustee wrongfully commingles trust money with his own and makes payments from the common fund, it will be presumed that he paid out his own money, and not the trust money . . . ."

In the instant case, not only did the evidence before us establish that James and Bessie Redpath had more than enough money in the Nebraska accounts to pay the entire premiums,

but that an amount in excess of the amount of money belonging to Alice Redpath and previously deposited in these Nebraska accounts was transferred to Tennessee before the premiums on the policy in question were paid. The evidence failed to establish clearly, satisfactorily, and convincingly that any portion of Alice Redpath's money was used to pay the premiums in question. The district court therefore correctly determined that the appellant has failed to meet her burden of proof to establish by evidence which is clear, satisfactory, and convincing in character that a constructive trust upon the proceeds of the life insurance policy should be impressed by reason of the alleged claim that moneys belonging to Alice Redpath were used to pay the premiums on the life insurance policy.

We believe that part of the confusion in this case arises by reason of the district court's having concluded that judgment should be entered against the estate of James M. Redpath for the amount of the premiums ($348) by reason of a confession of judgment. An examination of the record discloses that, while an effort was made by the appellee to confess judgment in the amount of $348, the offer was not accepted and therefore may not be considered by the trial court or this court in the determination of this case.

Neb. Rev. Stat. § 25-906 (Reissue 1985) provides as follows:

> After an action for the recovery of money is brought, the defendant may offer in court to confess judgment for part of the amount claimed, or part of the causes involved in the action. Whereupon, if the plaintiff, being present, refuses to accept such confession of judgment in full of his demands against the defendant in the action, or, having had such notice that the offer would be made, of its amount and of the time of making it, as the court shall deem reasonable, fail to attend, and on the trial do [sic] not recover more than was so offered to be confessed, such plaintiff shall pay all the costs of the defendant incurred after the offer. *The offer shall not be deemed to be an admission of the cause of action or amount to which the plaintiff is entitled, nor be given in evidence upon the trial.*

(Emphasis supplied.)

Appellant argues that while she did not accept the offer of confession in so many words, neither did she reject it, and therefore it should be considered to have been accepted. As noted in 49 C.J.S. *Judgments* § 148 at 275 (1947):

> In order that a confession of judgment may be binding on the plaintiff, it is essential that he, either expressly or impliedly, assent thereto; if it is made without his request, knowledge, or consent, and entered at the instance of the debtor alone, it will have no validity unless the creditor ratifies or accepts it. . . .

> . . . The creditor's consent to, or acceptance of, the judgment, if not express, may be implied from the circumstances of his dealing with it, as from the fact that he attempts to enforce it. In the absence of anything appearing to the contrary, the creditor's consent may be presumed from the record or from the fact that the judgment confessed operates to his benefit, but the creditor's mere silence or failure to object on being informed of the judgment does not amount to an acceptance of it, although it is admissible as evidence tending to prove his acceptance.

An examination of the record in this case clearly establishes that appellant did not accept or consent to the confession of judgment in the amount of $348 and, quite to the contrary, elected to litigate the question of whether Alice Redpath was entitled to receive all of the proceeds of the insurance policy. As we have already indicated, the evidence before us establishes that premiums were not paid from moneys belonging to Alice Redpath. The offer to confess judgment could only have been made in an effort to resolve the entire lawsuit for $348. The offer did not permit the appellant to both accept a judgment in the amount of $348 and litigate the further question of whether all of the proceeds of the policy were due and owing. In that regard, the district court was in error in entering judgment in favor of the estate of Alice Redpath and against the estate of James M. Redpath. To that extent the judgment of the district court must be modified in favor of the appellee, Bessie Ann Redpath, both individually and as personal representative of the estate of James M. Redpath, and against the estate of Alice

Redpath.

The remaining issue raised by appellee's cross-appeal appears to question the district court's entering a judgment against the estate of James M. Redpath in the amount of $45,119.15, the amount which the district court found had been converted by James M. Redpath from his mother. Appellee does not deny that funds were taken out of the Tennessee joint account and used solely for the benefit of James M. Redpath or his family. Her principal argument in this regard seems to be based upon the notion that when moneys are placed into a joint banking account, they become the property of the joint tenants and may be withdrawn by either party without liability to the other. In support of that position appellee cites to us several cases, including *White v. Ogier*, 175 Neb. 883, 125 N.W.2d 68 (1963), *Rose v. Hooper*, 175 Neb. 645, 122 N.W.2d 753 (1963), and *Crowell v. Milligan*, 157 Neb. 127, 59 N.W.2d 346 (1953). The difficulty with appellee's position is that she ignores the provisions of the Nebraska Probate Code enacted in this jurisdiction in 1974.

Neb. Rev. Stat. § 30-2703(a) (Reissue 1985) provides as follows: "A joint account belongs, *during the lifetime* of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." (Emphasis supplied.) All of the funds which were converted, as found by the district court, were so converted prior to the death of either Alice Redpath or James M. Redpath and therefore clearly fall within the provisions of § 30-2703. The comment to § 30-2703 further provides: "This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership." The comment then goes on to provide that this presumption, however, may be rebutted by evidence which is clear and convincing. Not only is the evidence in this case not clear and convincing that Alice Redpath intended to make a gift to her son, but it is actually clear and convincing that she never intended to do so. The evidence in this case clearly establishes that Alice Redpath was

not aware that moneys belonging to her and transferred to joint certificates of deposit would not remain her sole property or that the money had been used by her son for anything else except her care. The most that appellee argues is that the actual intent of Alice Redpath is not known. Appellee argues: "We stress the fact that Alice Redpath's actual intent in placing the accounts in joint ownership is not known." Brief for Cross-Appellant at 8. Accepting that as all of the evidence, we would be compelled to find that the party having the burden of overcoming the presumption created by § 30-2703, in this case appellee, failed and that the decision of the district court was correct.

Appellee further cites to us our decision in *Ford v. Jordan*, 220 Neb. 492, 370 N.W.2d 714 (1985). The *Ford* case has no application because it involved the disposition of joint tenancy property following the death of one of the joint tenants and is controlled by Neb. Rev. Stat. § 30-2704 (Reissue 1985) and not § 30-2703.

Section 30-2704(a) reverses the presumption following death, providing in part as follows: "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." See, also, *In re Estate of Lienemann*, 222 Neb. 169, 382 N.W.2d 595 (1986). In the instant case, James M. Redpath preceded his mother in death and had converted the funds in question prior to his death.

We believe that the judgment of the district court finding that the estate of James M. Redpath, deceased, is indebted to the estate of Alice Redpath in the amount of $45,119.15 was correct and should be affirmed. The judgment of the district court is therefore affirmed except as herein modified.

AFFIRMED AS MODIFIED.