MANUEL SALAZAR, APPELLANT, V. SCOTTS BLUFF COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

665 N.W.2d 659

Filed July 25, 2003.   No. S-02-656.

Maren Lynn Chaloupka and Robert Paul Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for appellant.

Michael J. Javoronok, of Michael J. Javoronok Law Firm, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Appellant, Manuel Salazar, brought an action against appellee, Scotts Bluff County (the County), under the Political Subdivisions Tort Claims Act (the Act), Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997 & Cum. Supp. 2000). Salazar seeks damages for spinal cord injuries he sustained in an automobile accident. The medical bills to date were $1,009,109.60; his future medical bills reduced to present value were $850,000; his loss of earnings reduced to present value was $200,000; and his total economic damages were $2,075,528.60. At trial, the district court found, inter alia, that the Act restricted the amount recoverable against a governing body to $1 million and thus entered an award in favor of Salazar in the sum of $1 million. Salazar appealed. We

moved the case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

The primary issue to be decided by this court is whether a political subdivision waives protection of the statutory limit on recovery pursuant to § 13-922 when the political subdivision procures liability insurance pursuant to § 13-916 in excess of the statutory limit.

## BACKGROUND

On April 1, 2000, while Salazar's vehicle was stopped in the eastbound lane of U.S. Highway 26, waiting to turn left, a pickup truck struck the rear of his vehicle, pushing him into the oncoming lane of traffic. Salazar's vehicle was then struck by a patrol car driven by a Scotts Bluff County deputy. At the time of the collision, the patrol car was traveling at speeds in excess of 75 m.p.h. in a 50-m.p.h. zone. As a result of the accident, Salazar was paralyzed.

The district court entered a partial summary judgment in favor of Salazar. The court found that the deputy had been negligent as a matter of law; that at the time of the accident, the deputy was acting in the course and scope of his employment; that the deputy's negligence was a proximate cause of the collision; and that the collision was a proximate cause of some damage to Salazar. The parties stipulated that Salazar had duly complied with all notice and claim requirements of the Act.

The matter proceeded to trial on the issues of comparative negligence and damages. The district court found each party's proportion of negligence for the accident to be as follows: Salazar 2 percent, deputy 49 percent, pickup driver 49 percent. The court also determined that Salazar suffered total economic damages of $2,075,528.60 and noneconomic damages of $5 million, for a total of $7,075,528.60. The court further determined that based upon Nebraska's contributory negligence statutes, the County's total liability was $4,484,018. The court determined that § 13-926 of the Act restricted the amount recoverable against a governing body to $1 million for any person for any number of claims arising out of a single occurrence. The court entered an award in favor of Salazar in the sum of $1 million.

After trial, pursuant to Neb. Ct. R. of Discovery 37(c) (rev. 2000), Salazar filed a motion to assess expenses incurred in proving the fairness and reasonableness of his medical expenses. The fairness and reasonableness had been denied by the County in its response to Salazar's request for admissions. The district court overruled Salazar's motion to assess expenses.

## ASSIGNMENTS OF ERROR

Salazar assigns that the district court (1) erred by failing to find that the County waived the protection of §§ 13-922 and 13-926 by purchasing insurance coverage in the amount exceeding the statutory cap; (2) erred by failing to find that the County waived the protection of §§ 13-922 and 13-926 by confessing judgment in an amount exceeding the statutory cap; and (3) abused its discretion by failing to assess against the County the costs of proving facts denied in its responses to request for admissions.

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *Ways v. Shively*, 264 Neb. 250, 646 N.W.2d 621 (2002).

■ The determination of an appropriate sanction under rule 37 rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Kaminski v. Bass*, 252 Neb. 760, 567 N.W.2d 118 (1997). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result. *In re Interest of J.K.*, 265 Neb. 253, 656 N.W.2d 253 (2003).

## ANALYSIS

■ In Salazar's first assignment of error, we are asked to determine if a political subdivision waives protection of sovereign immunity under the Act if it procures insurance in excess of the statutory limit. Statutes that purport to waive protection of the State's sovereign immunity are strictly construed in favor of the sovereign and against the waiver. *Keller v. Tavarone*,

262 Neb. 2, 628 N.W.2d 222 (2001). A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). Our analysis of the Act is guided by its plain language and the presumption against a waiver. No provision within the Act expressly waives the protection of sovereign immunity to the extent liability insurance is procured in excess of the statutory limits. Thus, in order for Salazar to prevail on appeal, waiver must be found by such overwhelming implication of the statutes as will allow no other reasonable construction.

Section 13-916 provides:

The governing body of any political subdivision, including any school district, educational service unit, or community college, may purchase a policy of liability insurance insuring against all or any part of the liability which might be incurred under the Political Subdivisions Tort Claims Act and also may purchase insurance covering those claims specifically excepted from the coverage of the act by section 13-910. Any independent or autonomous board or commission in the political subdivision having authority to disburse funds for a particular purpose of the subdivision without approval of the governing body also may procure liability insurance within the field of its operation. The procurement of insurance shall constitute a waiver of the defense of governmental immunity as to those exceptions listed in section 13-910 to the extent and only to the extent stated in such policy. The existence or lack of insurance shall not be material in the trial of any suit except to the extent necessary to establish any such waiver. Whenever a claim or suit against a political subdivision is covered by liability insurance or by group self-insurance provided by a risk management pool, the provisions of the insurance policy on defense and settlement or the provisions of the agreement forming the risk management pool and related documents providing for defense and settlement of claims covered under such group self-insurance shall be applicable notwithstanding any inconsistent provisions of the act.

Although procurement of insurance constitutes a waiver of the defense of governmental immunity as to these exceptions listed in § 13-910, the act in Salazar's case is not a § 13-910 event.

Section 13-902 states in part:

> The Legislature hereby declares that no political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and that no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act.

Section 13-903(4) defines a tort claim as follows:

> Tort claim shall mean any claim against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage, loss, injury, or death . . . .

As previously stated, § 13-910 sets out exemptions from the Act, and Salazar's case is not one of those exemptions.

The original Political Subdivisions Tort Claims Act was passed by the Legislature in 1969. See Neb. Rev. Stat. § 23-2401 et seq. (Cum. Supp. 1969). In 1987, the Legislature amended the Act to provide a cap on damages which could be recovered under the Act. See § 23-2416.03 (Supp. 1987). The cap is now set forth in §§ 13-922 and 13-926. In both of these "cap" statutes, the recovery is limited to $1 million for any person for any number of claims arising out of a single occurrence, and $5 million for all claims arising out of a single occurrence.

Originally, the Act had no cap and covered all activities except those listed in § 13-910. For activities exempted by § 13-910, a political subdivision could choose to have no insurance, in which case the subdivision was totally protected by reason of sovereign immunity; or a political subdivision could choose to purchase liability insurance, in which case it waived the protection of sovereign immunity. Salazar's claim, not being

based upon a § 13-910 activity, is limited by the provisions of §§ 13-922 and 13-926. The political subdivision in Salazar's case is liable whether or not it has purchased insurance because the protection of sovereign immunity was waived by the Act. The limit of that liability, however, is set by §§ 13-922 and 13-926 and not by the limit of any liability policy purchased by the political subdivision.

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Hauser v. Nebraska Police Stds. Adv. Council*, 264 Neb. 605, 650 N.W.2d 760 (2002); *Spradlin v. Dairyland Ins. Co.*, 263 Neb. 688, 641 N.W.2d 634 (2002). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Guenzel-Handlos v. County of Lancaster*, 265 Neb. 125, 655 N.W.2d 384 (2003); *Eyl v. Ciba-Geigy Corp.*, 264 Neb. 582, 650 N.W.2d 744 (2002).

We conclude that the statutory language of §§ 13-922 and 13-926 is plain, direct, and unambiguous. We are not called upon, and do not decide, whether §§ 13-922 and 13-926 apply to § 13-910 exemptions. We do, however, determine that the limit of liability for a tort claim not exempted by § 13-910 is $1 million for any person for one occurrence and $5 million for all claims arising out of a single occurrence. This language limits Salazar's claim to $1 million.

## CONFESSED JUDGMENT

Salazar's second assignment of error alleges that the district court erred by failing to find that the County waived protection of §§ 13-922 and 13-926 by confessing judgment in an amount exceeding the statutory caps. An offer of confession of judgment is not binding on an offeror where the offeree does not accept or consent to confession, but elects to litigate the question of the offeror's liability. See *In re Estate of Redpath*, 224 Neb. 845, 402 N.W.2d 648 (1987). The County made an offer of judgment to Salazar's attorney in the amount of $1,000,000.01 on January 16, 2002. The offer was to be withdrawn 5 days after service if no action was taken. Salazar took no action on this

offer, thus the offer stood withdrawn. There being no effective offer to confess judgment in excess of the cap, Salazar's second assignment of error is without merit.

### COSTS FOR REQUESTED ADMISSIONS

Salazar's final assignment of error alleges that the district court abused its discretion by failing to assess costs against the County pursuant to rule 37(c), which states:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he or she may, within 30 days of so proving, apply to the court for an order requiring the other party to pay him or her the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that:
>
> (1) The request was held objectionable pursuant to Rule 36(a), or
>
> (2) The admission sought was of no substantial importance, or
>
> (3) The party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or
>
> (4) There was other good reason for the failure to admit.

Prior to trial, Salazar requested 28 admissions from the County, asking it to admit that the medical charges incurred by him arising out of the accident were necessary, fair, and reasonable. In response, the County admitted that the services were necessary, but denied that the amounts billed were fair and reasonable. In order to prove that the bills were fair and reasonable, Salazar deposed some of the medical providers and presented that evidence at trial.

At trial, the County put forth its rationale for denying that Salazar's medical expenses were fair and reasonable. It contended that the proper measure of compensatory damages was limited to the rate of Medicaid reimbursements or reduced pay agreements, and not to the amount actually provided by the medical provider. The district court considered this issue to be a matter of first impression, but ultimately concluded that compensatory damages

depend on the fair and reasonable value of services needed and should not be limited to the amount actually paid to the provider. The district court determined that limiting damages for medical care to amounts received rather than to the value of such medical services would violate Nebraska's collateral source rule.

After trial, pursuant to rule 37(c), Salazar filed a motion to assess the County for the reasonable expenses incurred to prove that the medical expenses were fair and reasonable. The expense incurred totaled $5,822.67. Salazar argued that the issue presented was not a matter of first impression because the rule for compensatory damages in Nebraska has always been fair and reasonable value. Salazar argued that the collateral source rule would tend to indicate that Medicaid prices are generally irrelevant. He also argued that prices were irrelevant in his case regardless of the substantive law because Medicaid reimbursements and reduced pay agreements did not exist in his case. The district court overruled Salazar's motion. The court based its decision on rule 37(c)(3). The court determined that the County had good reason to deny the fairness and reasonableness of the medical expenses because a minority of jurisdictions treats the amount received as the fair and reasonable expense as opposed to the actual value charged.

A hearing on a motion for expenses pursuant to rule 37(c) is a legal proceeding entirely separate from the underlying proceedings concerning the merits of the case. *Kaminski v. Bass*, 252 Neb. 760, 567 N.W.2d 118 (1997). The appellate court reviewing a decision on a motion for expenses is to concern itself solely with the evidence established and produced at that hearing. *Id.* The determination of an appropriate sanction under rule 37 rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Id.* Once the party making a motion for sanctions proves the truth of the matter previously denied and that reasonable expenses were incurred in doing so, the burden then shifts to the nonmoving party to prove, by a preponderance of the evidence, one of the four exceptions enumerated in the discovery rule. *Id.*

Applying the foregoing principles of law to the instant case, we conclude that the district court erred in overruling Salazar's motion to assess expenses. As noted previously, rule 37(c) states

that a district court *shall* award expenses incurred in proving a statement previously denied unless one of four exceptions are proved. At the hearing on his motion to assess expenses, Salazar introduced exhibits 555 through 557. The exhibits established that in response to Salazar's request for admissions, the County denied that the medical expenses were fair and reasonable. The evidence also established that Salazar incurred expenses in proving that the expenses were fair and reasonable. The burden then shifted to the County to prove one of the four enumerated exceptions in rule 37(c). The County did not offer any specific evidence at the hearing except to ask "the Court to take [judicial] notice of its own files." The district court finally asked: "Essentially, what I'm understanding, both counsel are asking me to take into consideration all the evidence that we've received previously in this case in either support or opposition to this motion?" Both parties responded affirmatively. Nevertheless, we conclude that the County failed to meet its burden. To ask the court to take judicial notice of its file without specific reference to any evidence necessary to prove one of the four exceptions is not sufficient to meet the nonmoving party's burden. Such evidence fails to provide the court direction either at the original hearing or on appellate review. Because the County failed to meet its burden, the district court was required to award expenses to Salazar pursuant to rule 37(c), thereby making the court's overruling of Salazar's motion an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment in favor of Salazar and against the County in the sum of $1 million. However, we reverse the district court's decision to overrule Salazar's motion for expenses pursuant to rule 37(c) and award Salazar expenses in the amount of $5,822.67 incurred in proving that his medical expenses were fair and reasonable.

AFFIRMED IN PART, AND IN PART REVERSED.