BENNETT, superintendent of banks, *v.* ROSBOROUGH *et al.*

1. If a husband procures a policy of life-insurance which names his wife as beneficiary and contains provisions which authorize the insured to change the beneficiary or assign the policy without limitation except the observance of specified requirements as to the form of making

such changes and assignments, and the insured dies without having changed the beneficiary or assigned the policy, the wife will be entitled to the money payable under the policy after the death of the insured, in a contest with a creditor of the husband, although at the time the insurance was obtained and the premiums paid the insured was insolvent and the premiums were paid with money stolen from the creditor. GILBERT and HINES, JJ., dissent.

2. Pleadings are to be construed most strongly against the pleader. In an equitable suit by a creditor of an insured against the beneficiary named in several insurance policies, to recover money stolen by the insured from the plaintiff and used in paying premiums on such policies of insurance, allegations that "all or a large portion" of such money, and such money "entirely or largely," was stolen from plaintiff and so used, were subject to special demurrer on the ground of indefiniteness in failing to allege what money was so stolen and applied.

3. The allegations of the petition relied on to show (*a*) an assignment of the policy, (*b*) a change of beneficiary, and (*c*) the creation of an implied or constructive trust, were insufficient.

4. The demurrer to the petition as amended was properly sustained.

No. 3117. MARCH 3, 1923.

Equitable petition. Before Judge Hammond. Richmond superior court. February 11, 1922.

Certain policies of life-insurance were issued upon the life of Edward E. Rosborough. The beneficiary in one of them was the wife of the insured by formal assignment, and in the others the wife was originally named as beneficiary. The several policies contained provisions authorizing the insured to change the beneficiary by means as follows: (*a*) "By filing at the home office a written request on the company's form therefor, duly acknowledged, accompanied by this policy, such change to take effect only upon the endorsement of the same on the policy by the company." (*b*) "By filing written notice thereof at the home office of the company, accompanied by the policy for suitable endorsement thereon. Such change shall take effect upon the endorsement of the same on the policy by the company, and not before." (*c*) "By filing written notice thereof at the home office of the company, accompanied by the policy for suitable endorsement thereon." (*d*) "The insured . . may change any beneficiary or contingent beneficiary not irrevocably designated. . . No designation, direction, revocation, or change shall be effective unless duly made in writing and filed at the home office of the company (accompanied by the policy for suitable endorsement) prior to or at the time this policy shall become payable."

(e) "By filing written notice thereof at the home office of the company. Such change shall take effect only upon its endorsement on the policy by the company in the lifetime of the insured." (f) "By a written request, upon the society's blank, filed at its home office; but such change shall take effect only upon the endorsement of the same hereon by the Society." (g) "By filing written notice thereof at the home office of the company; and such change shall take place upon such filing, and not before."

The several policies also contained provisions authorizing the insured to assign the policy by means as follows: (a) "Any assignment . . must be made in duplicate, and both documents sent to the home office, one to be retained by the company and one to be returned." (b) "If this policy shall be assigned, the assignment must be in writing; and the company shall not be deemed to have knowledge of such assignment, unless the original or a duplicate thereof is filed at the home office of the company, and its receipt duly acknowledged." (c) "No assignment . . shall be binding upon the company until it be filed with the company at its said home office." (d) "No assignment . . shall be binding upon the company unless it be filed with the company at its home office." (e) No assignment will "be recognized until it has been duly filed with the company at its home office." (f) "No assignment . . shall be binding upon the society unless in writing and until filed at its home office." (g) "Any assignment . . shall be furnished to the company and a duplicate thereof attached hereto. No assignment shall impose any obligation on this company until the original thereof has been filed at the home office of the company." The insured was insolvent at the time the policies were issued, and he remained insolvent ever afterwards; but while so insolvent he paid the premiums on the insurance policies with money which ought to have been paid to his creditors, and in some instances he paid such premiums with money abstracted from the bank of which he was an officer. The day before he died, being heavily indebted to the bank, and contemplating death, he wrote his wife as follows: "I have life-insurance amounting to $94,000. I wish and request that you will from such insurance pay Mr. Hatch [meaning A. S. Hatch] $2500 I owe him, the Merchants Bank my portion of the debt of the American Ice Cream Com-

pany, for which Inman Curry and I are liable, retain $25,000, and pay over the balance to help pay the depositors of the Merchants Bank."

After the death of Rosborough, Rebecca C. Rosborough the beneficiary in the aforementioned policies of insurance became temporary administratrix of his estate. T. R. Bennett, as superintendent of banks, instituted an action against the temporary administratrix in her official and individual·character, and all of the insurance companies issuing the policies that were payable to the wife of the insured. The petition as amended alleged all that is stated above, and the following in substance. All of the policies contained express covenants to the effect that the assured had absolute right to change the beneficiary or assign the policy in accordance with provisions relating to those subjects (the material portions of which are hereinbefore quoted). The formal requirements as to change of beneficiary or assignment were intended only for the protection of the company; and were not intended to limit the property of the insured in the policies. By reason " of the utter insolvency of the said assured at the time of his death, and for many years prior thereto, each and all of said policies of insurance, and all moneys owing thereunder, were before and at the death of the assured his property; and all moneys due and collectible thereunder since his death are the property of his estate, subject to the payment of his creditors, and should be so collected and so applied." If the insurance money payable under such policies was not property of the estate on account of the facts above stated, the writing contained in the letter was an assignment of all such policies of insurance to the bank, subject only to payment of the debts therein named and to the retention by Mrs. Rebecca C. Rosborough of the sum of $25,000, and should be given effect as an assignment; and if the writing was not such as assignment, it was, except as to $25,000 apportioned to Rebecca C. Rosborough, a change of the beneficiaries in the insurance policies from Rebecca C. Rosborough to Hatch and the Merchants Bank to the extent of $2500 to Hatch and one half of the debt of the American Ice Cream Company to the Merchants Bank, and the balance to the bank; and if the writing did not operate as an assignment or change of beneficiaries, then, considered in connection with the circum-

stances in which the premiums were paid and the source of payment, it created a trust in favor of the bank for the benefit of its creditors. During all the time the insurance policies were being paid for, the insured was insolvent, and all or a large portion of the premiums paid for such policies was paid out of money stolen by the insured from the bank; and thus a constructive trust arose in favor of the bank, and the bank is entitled to the money collectible under such policies, as they were paid for out of the bank's money.

In an amendment to the petition it was alleged: "that the said Edward Eugene Rosborough was insolvent at the time that the first premium and each subsequent premium was paid by him on each and all of said policies payable to Rebecca C. Rosborough; that said Merchants Bank was, at the time of the purchase of such policies by the payment of such first and all subsequent premiums, a creditor of the said Rosborough to an amount in excess of the amounts payable and collectible under such policies; that such appropriations of moneys to the purchase of such policies containing the aforesaid provisions was, and was intended to be, a fraud on his creditors, and especially on such Merchants Bank, and such policies and the moneys owing thereunder were and are the property of such creditors and applicable to the payment of such creditors, and especially to your petitioner in charge of the affairs of such bank; and that the purchase of such policies and making them payable to Rebecca C. Rosborough, the wife of the assured, was an attempt to make a gift to his said wife while he was insolvent and such attempted gift was void as against his creditors, and especially as against said bank and as against your petitioner in charge of its affairs; and such policies and the moneys payable thereunder are the property of the said creditors, and especially said bank and your petitioner in charge of its affairs, and are applicable to the payment of such creditors, and especially to your petitioner in charge of the affairs of such bank." There were prayers for a receiver; for injunction; for decrees establishing plaintiff's right to the money payable under the insurance policies, and at all events a judgment for the amount of the bank's money that was used in paying the insurance premiums.

Mrs. Rosborough and certain of the insurance companies filed

general and special demurrers to the petition. Among the reasons why the petition did not allege a cause of action at law or in equity, it was specifically contended that the petition showed on its face that there was (*a*) no assignment of the policies, (*b*) no change of beneficiary, (*c*) no creation of a constructive or implied trust; and further, that it appeared from the petition that Mrs. Rosborough was entitled to the proceeds of the policies of insurance, and that the plaintiff had no interest therein. The 17th ground of demurrer was directed against paragraph 30 of the petition, which alleged that " all or a large portion " of the premiums paid for such insurance were paid out of money stolen from the bank. The ground of demurrer was that this paragraph " does not allege what insurance premiums were paid with money wrongfully taken from the bank." The demurrer was filed January 28, 1922. On February 6, the plaintiff filed an amendment for the purpose of meeting the grounds of demurrer. Paragraph 6 of the amendment purported to amend paragraph 30 of the original petition, but did not allege more specifically what insurance premiums were paid with money wrongfully taken from the bank. On this subject the amendment alleged that the first premiums and all subsequent premiums paid in the purchase of such policies were paid for " entirely or largely " with moneys stolen from the Merchants Bank. After the allowance of the amendment Mrs. Rosborough renewed her demurrer upon all the grounds therein taken, and demurred specially to that part of paragraph 6 of the amendment above referred to, on the ground, among others, of indefiniteness. The demurrers were sustained, and the plaintiff excepted.

*Barrett & Hull,* for plaintiff.

*W. Inman Curry, W. K. Miller, Cumming & Harper, Callaway & Howard, Pierce Brothers, Little, Powell, Smith & Goldstein,* and *Rosser, Slaton & Hopkins,* for defendants.

ATKINSON, J. 1. It is declared in the Civil Code, § 2498: " The assured may direct the money to be paid to his personal representative, or to his widow, or to his children, or to his assignee; and upon such direction given, and assented to by the insurer, no other person can defeat the same. But the assignment is good without such assent." The principle of this section was applied in *Smith* v. *Head,* 75 *Ga.* 755. That was a case

where a husband obtained a policy of life-insurance which was payable to his wife. It was held that the policy was the property of the wife, and could not be subjected by creditors of the husband. In the third division of the opinion, after referring to the language of the above-quoted statute, which was contained in the first and all subsequent codes of this State, it was said: " This is too plain for argument. The assured directed the money paid to his wife. He made no change. No other person can. . . We conclude that in any view of the case, under our own law, the money is Mrs. Head's; and we deem it unnecessary to follow counsel into the learning and elaboration of other points made upon text-books and adjudications under other laws and by other courts. Nor is it necessary to go into the means the assured used to pay the premiums, or his solvency or insolvency, as affecting creditor's rights, because our statute [the provision above quoted] allows no person to defeat the direction the assured gave to the payment, that is, to whom it should be made, at his death."

The case of *Hubbard* v. *Turner*, 93 *Ga.* 752 (20 S. E. 640, 30 L. R. A. 593), was where a person took out a policy of insurance payable to his " heirs or assigns." A contest arose between creditors of the assured and his heirs at law, over the fund derived from the policy. There was no evidence that the insured was insolvent when the policy was taken out or when the premiums were paid, or that any of the claims of the creditors existed at the time the premiums were paid. It was held that the heirs were entitled to the proceeds of the policy. In the course of the opinion it was said: " The proceeds of this policy were not, under the facts of this case, any part of the estate of the assured, and therefore not subject to the claims of his creditors. Had any fraud, actual or constructive, been committed by the assured upon their rights, either in taking out or keeping up the policy, they might be equitably entitled to follow and reclaim money which the assured had invested in the policy and which ought to have been used, or reserved for use, in satisfying their demands. No reference is here intended to the class of cases falling under section 2820 of the Code [of 1882]. Where the assured directs the money due upon a policy to be paid to any of the persons designated in that section, even though he may be insolvent, and use, in paying premiums, money to which his creditors are equitably

entitled, no person can defeat the policy. This is so because the law so declares in express terms." That decision announced two propositions: (1) That if the insured commits fraud, actual or constructive, upon his creditors, either in taking out or keeping up the insurance, the latter may be equitably entitled to follow up and claim money which the assured has invested in the policy. (2) Where the assured directs the money due upon a policy to be paid to any of the persons designated in the statute, " even though he may be insolvent, and use, in paying premiums, money to which his creditors are equitably entitled," the creditors can not complain. While announcing the first proposition, whether or not it was necessary to a decision of the case or stated a sound principle of law, it was explained that such statement was not intended to refer to the class of cases falling under section 2498 in the Code of 1910, above quoted. Under that law, where the beneficiary is " the personal representative " or " the widow " or " the children " or " the assignee " of the insured, the money payable under the insurance policy must follow the direction pointed out in the policy, which is the contract of insurance under which the money is to be paid. Where the husband takes out a policy payable to his wife and does not change the beneficiary, creditors of the husband can not in this State, in a contest with the wife, take the money, even though premiums might have been paid at a time when the husband was insolvent or with money which had been stolen from the creditors. Whether or not this ruling comports with the weight of authority in other jurisdictions does not affect this case. The case is within the class specified in the code section, and the widow is entitled to the money under the decisions of this court construing and applying that provision of law. The request to review and overrule the decision in the case of *Smith* v. *Head, 75 Ga. 755*, is denied.

2. Since pleadings are to be construed most strictly against the pleader, even if an innocent beneficiary, who was not a party to any larceny or fraud perpetrated by the insured in obtaining money with which to pay premiums on the policy of insurance, could in equity, under the statutes of this State, be compelled to reimburse, out of money payable on such insurance, the person so defrauded, allegations in a petition seeking such reimbursement, that " all or a large portion " of the money used in paying

the premiums, or such money " entirely or largely," was stolen etc., were subject to special demurrer. *Babcock Lumber Co.* v. *Johnson,* 120 *Ga.* 1030 (6) (48 S. E. 438) ; *Fraser* v. *Smith & Kelly Co.,* 136 *Ga.* 18 (70 S. E. 792).

3. It was said in *Smith* v. *Locomotive Engineers &c. Insurance Asso.,* 138 *Ga.* 717 (76 S. E. 44) : " A mutual benefit association may make reasonable regulations defining the methods by. which a member may change the beneficiary named in his benefit certificate ; and when such regulations are made they become part of the contract, and the right to change can be exercised in no other way. 4 Cooley's Briefs on Insurance, 3766. If, however, the insured has done substantially all that is required of him, or all that he is able to do, to effect a change of beneficiary, and all that remains to be done is ministerial action of the association, the change will take effect though the details are not completed before the death of the insured. Ib. 3769 ; *Nally* v. *Nally,* 74 *Ga.* 669 (58 Am. R. 458) ; *Brown* v. *Dennis,* 133 *Ga.* 791 (66 S. E. 1080) ; *Brown* v. *Dennis,* 136 *Ga.* 300 (71 S. E. 421). Some affirmative act, however, on the part of the member to change the beneficiary is required ; his mere intention will not suffice to work a change of beneficiary. Niblack's Accident Insurance & Benefit Societies, § 218 ; *Freund* v. *Freund,* 218 Ill. 189 (75 N. E. 925, 109 Am. St. R. 283) ; 29 Cyc. 132-133." Applying the law thus stated it was said : " It follows, that where a mutual benefit association issued a certificate to a member, in which his mother was designated as the beneficiary, it not appearing that the right of the member to change the beneficiary was restricted by statute, or anything in the charter or the by-laws, or in the certificate, nor that any method for changing the beneficiary was prescribed, the member at the time being an unmarried man, who subsequently married, and as an inducement thereto he agreed that if the woman would marry him she should be made the beneficiary in the certificate in place of the member's mother ; and where it appeared that the member never did anything to carry out such contemplated change of the beneficiary, but did promise from time to time to have the change made, and about two years after the marriage wrote his wife that he had written the association requesting the change of beneficiary to be made, the beneficiary named in the certificate was, upon the death of the mem-

18

ber entitled to the benefit fund due upon the certificate, as against the widow of the member."

The several policies of insurance involved in this case specify the manner in which change of beneficiaries might be made. There was no attempt to change the beneficiary from the wife to some one else, in any instance, by complying with the specified form or otherwise. It is contended that the letter had that effect, but that contention is not well founded. The letter did not designate any particular policies, or purport to assign the policies, but was a statement by the insured having reference to a disposition of money that would be collectible on policies held by the insured after his death. If the money would be property of the insured, the letter would be testamentary in character and void for non-compliance with the requirements of the law with reference to the execution of wills. What has been said with reference to change of beneficiaries applies also to the contentions that if the letter did not amount to a change of beneficiary, it amounted to an assignment of the policies; and that if it did not amount to an assignment of the policies, its effect, considered in connection with the character of the policies and the circumstances of the payment of the premiums and source from which the money came to pay the premiums, was to create an implied or constructive trust in the money collectible under the policies for the payment of the creditors to the extent specified in the letter. In the circumstances there was no change of beneficiary, or assignment of the policies, or creation of a trust for the benefit of the creditors.

4. The court did not err in sustaining the demurrers to the petition.

*Judgment affirmed. All the Justices concur, except Gilbert and Hines, JJ., dissenting.*

HINES, J. I dissent from the opinion of the majority in this case. I can not agree to the proposition that where a husband takes out a policy of life insurance, in which he names his wife as beneficiary, and dies without having changed the beneficiary or assigned the policy, " the wife will be entitled to the money payable under the policy after the death of the insured, in a contest with a creditor of the husband, although at the time the insurance was obtained and the premiums paid the insured was

insolvent and the premiums were paid with money stolen from the creditor." The majority put their decision upon the Civil Code (1910), § 2498, *Smith* v. *Head,* 75 *Ga.* 755, and *Hubbard* v. *Turner,* 93 *Ga.* 752 (20 S. E. 640, 30 L. R. A. 593). These authorities do not sustain the above doctrine. The code section is as follows: "The assured may direct the money to be paid to his personal representative, or to his widow, or to his children, or to his assignee; and upon such direction given, and assented to by the insurer, no other person can defeat the same." The meaning of this section does not justify the position taken by the court in this case. Its meaning is clear. When the insured· takes out a policy of life-insurance and directs the money arising therefrom at his death to be paid to his personal representative, his wife, his children, or to his assignee, and when such direction is given and assented to by the insurer, no other person can defeat the same by giving any other direction as to how such money shall be paid. It does not mean that any person who may have an equitable interest in the proceeds of such policy can not enforce the same against the beneficiary named therein. Persons who for any reason may have such equitable title or interest in such policy, or in its proceeds, upon the death of the insured can enforce the same. This doctrine has been recognized by a long line of decisions of this court.

In *Nally* v. *Nally,* 74 *Ga.* 669 (58 Am. R. 458), an unmarried man took out a policy of insurance on his life, naming his sister as beneficiary. The brother delivered the policy to the sister, and subsequently married, and as an inducement he agreed that if the woman would marry him she should be made beneficiary in said policy. When the next semi-annual premium fell due the insured paid it on condition that the beneficiary should be changed from his sister to his wife. The officers of the insurance company agreed to attend to the matter, but overlooked it; and after the insured's death, it was held that the wife was entitled to the proceeds of the policy, although the wife had never been substituted as beneficiary in place of the sister. The ruling in *Nally* v. *Nally* was followed in *Brown* v. *Dennis,* 136 *Ga.* 300 (71 S. E. 421), in *Page* v. *Bell,* 144 *Ga.* 650 (87 S. E. 887), and in *Dell* v. *Varnedoe,* 148 *Ga.* 91 (95 S. E. 977). In the latter case a brother took out a benefit certificate in a mutual benefit

association, in which his sister was designated as beneficiary. He afterwards married, and agreed with his wife that if she would pay out of her personal funds the premiums on this certificate as they fell due he would cause her to be named as beneficiary in the policy with the right to collect the proceeds thereof upon his death; and where the insured in accordance with the agreement designated, by his endorsement entered upon the policy, his wife as the beneficiary therein, and caused his signature to be attested by the secretary of the local camp of said association and exhibited the same to his wife, but did not forward the policy to the association as required by its by-laws, so as to perfect the change of beneficiary, the wife in a contest with the sister over the insurance fund was, " upon the application of equitable principles, entitled to the fund."

We might multiply these decisions; but the above establish the doctrine that when the insured directs that the proceeds of a policy of insurance on his life be paid to the beneficiary therein named, persons having equitable claims on the proceeds can enforce the same against the beneficiary named in the policy. The decisions of this court cited in the opinion of the majority do not sustain the principle announced by this court. The case of *Smith* v. *Head,* 75 *Ga.* 755, involved a controversy between the wife of the insured, who was named in the policy as beneficiary, and a creditor of the husband, to whom the wife had assigned the policy to secure a debt due by the husband to the assignee. It was held that the assignment was void. The rights of creditors of the husband to the proceeds were not involved. In *Hubbard* v. *Turner,* it was distinctly recognized that creditors might have the right to subject the proceeds of an insurance policy to the payment of their claims, after the husband had paid the premiums when he was insolvent and while indebted to said creditors.

The principle announced by this court can not be the true law. If it were, one owning $100,000 worth of property and owing $75,000 of debts could convert his property into cash, invest the same in paid-up insurance, naming his wife as beneficiary, and the creditors of the husband could not subject the policy or its proceeds to the payment of their claims. If the doctrine announced by the majority is the true law, if a bank cashier were to steal $100,000 from a bank, invest it in paid-up

insurance, and take out a policy in which his wife were named as beneficiary, the bank could not enforce its claim against the policy or the proceeds thereof and collect the same on the death of the insured. This doctrine, it seems to me, is wholly untenable. The overwhelming current of decisions in other jurisdictions declare it to be contrary to the true doctrine.

For the above reasons, I am unable to agree to the conclusion reached by the majority. I am authorized to say that Gilbert, J., concurs in this dissent.