A90A0422. AMBASE INTERNATIONAL CORPORATION et al. v. BANK SOUTH, N.A.

(395 SE2d 904)

COOPER, Judge.

This case arises from an action brought by appellee, Bank South, to recover the balance due on a commercial installment note. The trial court granted summary judgment to appellee and appellants bring this appeal.

Appellants are Ambase International Corporation ("Ambase"), Management Services, Inc. ("MSI"), Everett Suters ("Suters"), and Curry Brothers, Inc., d/b/a Curry Marketing Systems ("Curry"). Ambase is the wholly owned subsidiary of MSI, and Suters is the chairman of the board of Ambase, MSI, and Curry as well as the majority shareholder of MSI.

In June 1986, Ambase executed a commercial installment note in favor of appellee, Bank South, in the principal amount of $300,000 and simultaneously executed a security agreement giving Bank South a security interest in the equipment, inventory and accounts receivable of Ambase. MSI and Suters were guarantors of the loan. MSI, which had an established lender/borrower relationship with Bank South since 1984, was also indebted to Bank South as evidenced by a promissory note in an amount in excess of $80,000 in favor of Bank South and a security agreement covering MSI's equipment, inventory and accounts receivable. During the latter part of 1986, Ambase and MSI failed to make the installment payments on their notes, prompting John Murphy ("Murphy"), Bank South's account representative for the Ambase and MSI loans, to discuss with Suters alternate proposals for retiring the debts of Ambase and MSI. Following the discussions, Ambase and MSI each established collateral accounts with Bank South into which all accounts receivable were deposited and, at Bank South's direction, the funds deposited were transferred into the respective operating accounts of the two companies. For approximately the next seven months, neither Ambase nor MSI made any payments of principal due under the notes. During this time, MSI was engaged in negotiations with a company for the proposed sale of MSI's customer list. However, the deal could not be consummated without the approval of Bank South. Bank South analyzed the company's offer but declined to approve the sale. On July 17, 1987, in separate letters to each company, Bank South declared the Ambase and MSI notes to be in default. The following week, Bank South applied the funds in the collateral accounts to the respective indebted-

ness of the two companies. The indebtedness of MSI was satisfied in full and the indebtedness of Ambase was further reduced by the proceeds of a subsequent sale by MSI of a portion of its office equipment and furniture and the collection of accounts receivable; however, an outstanding principal balance due on the Ambase note remained. Bank South sued Ambase, MSI and Suters for the amount due under the note plus interest and attorney fees and also sued MSI, Suters, and Curry alleging the fraudulent conveyance of an insurance policy. Appellants answered, denying any liability under the note and further denying the allegation of fraudulent conveyance, and counterclaimed, seeking damages from Bank South for the commercially unreasonable sale of assets, tortious interference with contract, bad faith foreclosure and liquidation, and unjust enrichment. The trial court granted summary judgment to Bank South on its claim and on all counts of appellants' counterclaim. Although the sole enumeration of error is the trial court's grant of summary judgment to Bank South, appellants allege several erroneous findings and conclusions of the trial court in entering the order.

1. Appellants contend that the sale of equipment belonging to MSI, and the sale of a mainframe computer belonging to Ambase, were performed at the request of Bank South and were not conducted in a commercially reasonable manner pursuant to OCGA § 11-9-504. The record reflects that MSI entered into a written agreement with an auction company for the sale of MSI's furniture and equipment which belonged to Bank South by virtue of the security agreement; that pursuant to that agreement the checks received from the auction were to be made jointly payable to MSI and Bank South; that the agreement with the auctioneer was signed by MSI's vice-president; and that a week prior to the auction a bill of sale was signed by MSI's vice president for the sale of Ambase's computer mainframe. The trial court found that the written contracts for the auction and sale of the MSI and Ambase assets clearly show that MSI and Ambase were the sellers of the assets and the written agreements could not be contradicted by parol evidence and further, that since appellants were the sellers, the requirement of OCGA § 11-9-504 that the sale be conducted in a commercially reasonable manner was inapplicable. Appellants argue that the trial court erred in not admitting parol evidence, which appellants contend would have raised a question of fact as to whether MSI or Bank South was the seller at the auction. We find no error with the trial court's ruling. Bobby Brown, vice-president of MSI and Ambase, testified during his deposition that two days before the sale of MSI's equipment, he received a letter from MSI's landlord stating that if the past due rent in the amount of almost $150,000 was not paid in three days, legal action would be taken to recover the premises being leased. On the day Brown received the letter, Bank

South had a representative present, who was tagging the furniture and equipment of MSI which was secured by Bank South's lien. Brown contends that the Bank South representative made the decision to sell the equipment and that he went along with it because he was trying to cooperate. "Although parol evidence as to the surrounding circumstances is admissible to explain ambiguities and to aid in the construction of contracts, [OCGA § 24-6-3 and § 24-6-4] parol evidence which contradicts or varies the terms of a written instrument is inadmissible." *Kellos v. Parker-Sharpe*, 245 Ga. 130 (1) (263 SE2d 138) (1980). Appellant's attempt to show that Bank South was the seller of MSI's equipment directly contradicts the terms of the unambiguous written agreement and the evidence was properly excluded. It also appears from the record that even if the evidence were admitted, it would not raise a question of fact as to whether Bank South was the seller. Brown's testimony at best would have established that as a result of the impending dispossession, he felt as though he had no alternative other than selling the equipment. There is no evidence of any undue coercion or fraudulent inducement on the part of Bank South from which an inference could be drawn that Bank South was the seller of the assets in question; therefore, any error in not admitting the evidence was harmless.

2. We have reviewed the record and find no error in the trial court's finding that the relationship between appellants and Bank South did not transform from borrower/lender into a partnership or joint venture. Appellants contend that as early as December 1986 Bank South changed its role from that of lender to one of partner with the debtor. In support of their contention, appellants allege that during a telephone conversation between Murphy and Brown, Murphy referred to the bank's relationship with Ambase and MSI as a "partnership" and that Bank South took over the day to day operations of MSI and Ambase. Murphy testified during his deposition that if he used the word "partner," he meant only that Bank South was an interested party in the retirement of the outstanding debts and was willing to cooperate with appellants in trying to accomplish that goal. The record reflects that Bank South took an active interest in the repayment of the loans by Ambase and MSI to the extent of having Ambase and MSI set up controlled depository accounts so that accounts receivable could be monitored on a daily basis, but that Bank South did not exercise control over how the funds in Ambase and MSI's operating accounts were used. Nor do we find that Bank South's forbearance from collecting the indebtedness transformed the relationship from borrower/lender to a partnership or joint venture. The record is replete with evidence of Bank South's efforts to work with Brown on a regular basis toward Bank South's goal of retiring the loans which continuously went unpaid. Thus, "[c]ontrary to the

appellants' allegation, the record affirmatively shows that the relationship between [Ambase and MSI] and [Bank South] was that of borrower/lender and that a joint venture did not exist." *Dolanson Co. v. C & S Nat. Bank*, 242 Ga. 681 (1c) (251 SE2d 274) (1978). Furthermore, "even if a joint venture was shown to exist, the appellants have not demonstrated how this would preclude the bank from enforcing the clear and unambiguous terms of the [notes they signed]." Id at 684.

3. Appellants' argument that Bank South unreasonably refused to cooperate in the consummation of the sale of MSI to another company is without merit. The record shows that prior to the defaults by MSI and Ambase, MSI entered into negotiations with another company for the sale of MSI's customer base. Bank South evaluated the offer but declined to consent to the sale; therefore, the sale was never consummated. Bank South was under no obligation to agree to the sale and place itself in a less secure position with respect to the notes and security agreement, and was authorized to decline to give its consent to any proposal which it determined was not in the best interest of the bank. There being no wrongful, unlawful, or unauthorized action on the part of Bank South, appellants' claim for tortious interference with contract was properly denied. See *Singleton v. Itson*, 192 Ga. App. 78, 80 (383 SE2d 598) (1989).

4. At the time of default, MSI was the owner and sole beneficiary of a one million dollar life insurance policy, which had lapsed due to nonpayment of the premium, on the life of Dale Burri, the president of Ambase and MSI. Subsequent to the default, Curry paid the past due premium to reinstate the policy and a change of beneficiary form was executed transferring MSI's interest in the proceeds to Curry. Upon Burri's death in August 1987, the proceeds of the policy were paid to Curry. The trial court found that the transfer of the insurance policy was without consideration at a time when MSI was insolvent, therefore it was a fraudulent conveyance within the meaning of OCGA § 18-2-22 (3). A creditor/debtor relationship between Bank South and MSI at the time the policy was transferred having been conclusively shown by the evidence, the two elements which must be established in order to meet the test of OCGA § 18-2-22 (3) are: (1) a voluntary conveyance made without valuable consideration and (2) the debtor's insolvency at the time of the conveyance. *Stokes v. McRae*, 247 Ga. 658 (1) (278 SE2d 393) (1981). We note at the onset that appellants' argument that nothing of value was transferred because the policy had lapsed at the time of transfer and had no cash value is without merit. MSI's interest, as beneficiary in a one million dollar life insurance policy, was one that was capable of being transferred (see *McGahee v. McGahee*, 204 Ga. 91 (2) (48 SE2d 675) (1948)), and the execution by the parties of the change of beneficiary form prior to

the actual reinstatement of the policy does not change the substance of the transfer. It is undisputed that Curry gave MSI nothing of value for the insurance policy, and that at the time of the transfer MSI was unable to pay the debts of many of its creditors, including its landlord; therefore, we find no error with the trial court's finding that there was a fraudulent conveyance within the meaning of OCGA § 18-2-22 (3).

We also conclude that OCGA § 33-25-11 (b) is inapplicable and does not limit Bank South's recovery to the amount of fraudulently paid premiums. OCGA § 33-25-11 (a) concerns the rights of beneficiaries to life insurance policies as against creditors and specifically does not apply to cases of transfers of life insurance policies with the intent to defraud creditors. OCGA § 33-25-11 (b) creates an exception to subsection (a) for the benefit of creditors by providing that "the amount of any premiums *for said insurance* paid with intent to defraud creditors with interest thereon shall inure to the benefit of creditors from the proceeds of the policy." Inasmuch as OCGA § 33-25-11 does not apply where the policy has been fraudulently assigned, it is inapplicable to appellants' case.

For the foregoing reasons, we find that the trial court's grant of summary judgment to Bank South was correct.

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED JULY 12, 1990.

*Glass, McCullough, Sherrill & Harrold, John A. Sherrill, Evert & Weathersby, Michael N. Weathersby*, for appellants.

*Kilpatrick & Cody, Stephen E. Hudson, Susan A. Cahoon*, for appellee.