## A98A2184. ROSE v. ZUROWSKI et al.
### (511 SE2d 265)

BEASLEY, Presiding Judge.

Following various disputes with other members of Moose Lodge No. 1688, Charles Rose gradually lost several benefits of the Lodge, including employment as social manager, position as an officer, and eventually membership in the Lodge. Rose blamed John Hill (a representative of Moose International — the national organization) and Walter Zurowski (a local Lodge officer) for his demise and sued them. He alleged they conspired to tortiously interfere with his at-will Lodge employment, caused slanderous accusations, orchestrated a hearing without due process protections, and helped deprive him of his office. The appeal is from summary judgment for the defendants on all claims.

1. Rose contends Zurowski and Hill conspired in Lodge committee meetings to have him fired in retaliation for his accusing Zurowski's wife of misappropriating Lodge funds. "Where it is sought to

---

impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage."[1] "Although interference with contractual relations may occur by means of a conspiracy, there must exist a wrongful interference before any liability may be imposed."[2]

The tort alleged is wrongful interference with Rose's employment contract with the Lodge. Although it was at will, that did "not make it one at the will of others, and a malicious and wrongful interference with such employment by another is actionable. . . ."[3] *Sullivan v. Horn*[4] identifies the elements: "In an action for tortious interference with an employment relationship that is terminable at will, the plaintiff must show that a party with no authority to discharge the employee, being activated by an unlawful scheme or purpose to injure and damage him, maliciously and unlawfully persuades the employer to breach the contract with the employee."[5]

"Malice plus injury to business of itself does not, however, constitute the tort of wrongful interference with business. Rather, *an independent wrongful act* is required as well as an injury."[6] *Singleton v. Itson*[7] illustrates this principle. For purely personal reasons a co-employee complained about Singleton violating company policy and criticized his performance, resulting in Singleton's discharge. Holding that evidence of malice alone was insufficient to show tortious interference with Singleton's employment, the trial court granted a

---

[1] (Citations and punctuation omitted.) *Cook v. Robinson*, 216 Ga. 328 (1) (116 SE2d 742) (1960); see *First Fed. Savings Bank v. Hart*, 185 Ga. App. 304, 305 (2) (363 SE2d 832) (1987) ("[a]ccurately speaking, *there is no such thing as a civil action for conspiracy*. There is an action for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone") (punctuation omitted; emphasis in original).

[2] (Citations omitted.) *Singleton v. Itson*, 192 Ga. App. 78, 81 (383 SE2d 598) (1989).

[3] *Ott v. Gandy*, 66 Ga. App. 684, hn. 1 (19 SE2d 180) (1942); see *Ga. Power Co. v. Busbin*, 242 Ga. 612, 613 (2) (250 SE2d 442) (1978) ("even though a person's employment contract is at will, he has a valuable contract right which may not be unlawfully interfered with by a third person").

[4] 221 Ga. App. 289, 290 (470 SE2d 765) (1996).

[5] (Citation and punctuation omitted.) Id. See *Barnwell v. Barnett & Co.*, 222 Ga. App. 694, 695 (1) (476 SE2d 1) (1996) ("[t]ortious interference with [at-will distributorship] contract requires proof of: (1) an independent wrongful act of interference by a stranger to the contract; (2) malicious intent to cause injury; and (3) resulting damage"). See generally, as to all types of tortious interference cases, *Kitfield v. Henderson, Black & Greene*, 231 Ga. App. 130, 132-133 (3) (498 SE2d 537) (1998) ("[t]o establish a cause of action for tortious interference with business or contractual relations, a plaintiff must show that the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury").

[6] (Citations and punctuation omitted; emphasis in original.) *Singleton*, supra, 192 Ga. App. at 79; see *Barnwell*, supra, 222 Ga. App. at 695 (1) ("[t]ortious interference with contract requires proof of . . . an independent wrongful act of interference by a stranger").

[7] Supra.

directed verdict to the co-employee.

*Singleton* affirmed, explaining that "[d]ivulging truthful information and expressing critical personal opinions about a co-employee's work are not wrongful or unlawful acts and those acts cannot, therefore, give rise to liability for tortious interference with contractual relations in the event that the employer makes the independent determination that the truthful information and critical opinions warrant termination of an at-will employee. There being no evidence of an act of [the co-employee] which was independently wrongful or unlawful, the grant of a directed verdict in favor of her was correct."[8] Since the tort was first recognized in the employment context, necessary ingredients include that the interference must be malicious *and* unlawful or wrongful.[9]

Focusing on the "improper action or wrongful conduct" element common to all tortious interference claims, *Disaster Svcs. v. ERC Partnership*[10] explained: "Improper actions constitute conduct wrongful in itself; thus, improper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions."[11] For example, instructing a fellow employee to commit perjury and then threatening him when he refuses meets this description.[12] On the other hand, accurately informing an employee's superiors that he owes money to the corporation does not.[13]

Rose did not allege or present any evidence of wrongful or improper actions by either Zurowski or Hill in connection with the events leading up to his discharge from Lodge employment. At most he only alleged that they acted for purely personal reasons. Bad motive, a subjective prompter, does not poison the legitimacy of an act, which is measured objectively. Summary judgment was warranted on this claim.

2. The next claim is that Zurowski and Hill orchestrated and participated in a hearing on restricting Rose's rights to the Lodge's social quarters. The hearing was conducted without Rose having the right to face or cross-examine his accusers, to have counsel present,

---

[8] 192 Ga. App. at 80-81.

[9] *Ambase Intl. Corp. v. Bank South*, 196 Ga. App. 336, 339 (3) (395 SE2d 904) (1990) (wrongful or unlawful); *American Standard v. Jessee*, 150 Ga. App. 663, 666 (3) (258 SE2d 240) (1979) (malicious and unlawful); *McElroy v. Wilson*, 143 Ga. App. 893, 894 (1) (240 SE2d 155) (1977) (malicious and unlawful); *Ott*, supra, 66 Ga. App. at 684, hn. 1 (malicious and wrongful).

[10] 228 Ga. App. 739, 740-742 (492 SE2d 526) (1997).

[11] (Citation and punctuation omitted.) Id. See *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 349 (2) (392 SE2d 860) (1990).

[12] *Troy v. Interfinancial*, 171 Ga. App. 763, 768 (2) (320 SE2d 872) (1984).

[13] *Medlin v. Carpenter*, 174 Ga. App. 50, 55 (8) (329 SE2d 159) (1985).

or to disqualify members of the tribunal whose wives were witnesses at the hearing. Such rights relate to hearings before governmental tribunals, not to private hearings to discipline club members. "[D]isciplinary actions taken by a private, social club against its members are not matters of constitutional law. Appellant's rights, if any, are governed by the by-laws, which constitute the agreement between the corporation and its members."[14]

Rose has not alleged or presented evidence that the Lodge by-laws were not followed in good faith. The by-laws only require that a hearing be held before the House Committee before suspending social quarters privileges of a member. Not only was such a hearing held, but Rose was notified of the hearing, attended and presented witnesses, asked questions of the committee, and received notice of the decision to restrict his privileges. Such does not reflect a lack of good faith compliance. Additional due process safeguards guaranteed by the Georgia and federal constitutions for governmental hearings are of no relevance.

Rose argues that the hearing violated OCGA § 14-3-621 (1), which provides: "No member of a corporation may be expelled or suspended, and no membership or memberships in such corporations may be terminated or suspended except pursuant to a procedure that is fair and reasonable and is carried out in good faith." Assuming this statute applies, the argument fails for at least three reasons. First, the statute begins with the proviso: "Unless otherwise expressly provided in a corporation's articles of incorporation or bylaws. . . ." The Lodge by-laws covered the procedure for restricting social quarters privileges. Second, the statute by its terms applies to membership expulsion or suspension, not to restrictions of social privileges. Third, the statute only requires that the procedure be fair and reasonable under the circumstances, which it was. There being no statutory violation, Rose's citation to *Smooth Ashlar Grand Lodge &c. v. Odom*[15] is inapplicable.

Summary judgment on this claim also was proper.

3. Finally, it was not error to reject Rose's claims that Zurowski and Hill caused others to make slanderous accusations against him and helped deprive him of his Lodge office. No evidence controverted Zurowski's and Hill's testimony that they had nothing to do with the statements. The decision to strip Rose of his office came from the national organization, and no evidence showed that Zurowski or Hill

---

[14] (Citations and punctuation omitted.) *Bartley v. Augusta Country Club*, 254 Ga. 144 (1) (326 SE2d 442) (1985); see *Atlanta Country Club v. Smith*, 217 Ga. App. 515, 517 (1) (458 SE2d 136) (1995) ("disciplinary matters pertaining to members of nonprofit corporations proceed as a matter of contract to which the principles of constitutional law do not apply").

[15] 136 Ga. App. 812, 815 (1) (222 SE2d 614) (1975).

had any involvement in the decision, let alone improper involvement. Summary judgment was appropriate.[16]

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 29, 1999.

*Groover & Childs, Denmark Groover, Jr.*, for appellant.

*Martin, Snow, Grant & Napier, Robert R. Gunn II, Thomas P. Allen III*, for appellees.

---

[16] See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).